IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JONATHAN D.,[1]

             Plaintiff,

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

             Defendant.

No. 1:24-cv-699-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Jonathan D. seeks judicial review of the Social Security Commissioner ("Commissioner")'s final decision denying his application for child insurance benefits and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

      Plaintiff filed an application for child insurance benefits and SSI on October 10, 2019, with an amended alleged onset date of August 26, 2005. Tr. 218-25, 233-34. The Commissioner denied Plaintiff's claim initially and on reconsideration. Tr. 127-35, 149-56. Plaintiff filed a

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION AND ORDER

written request for a hearing, and a hearing was held before Administrative Law Judge Christel Ambuehl in May, 2023. Tr. 40-59. The ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 13-36. The Appeals Council denied Plaintiff's request for review on February 23, 2024. Tr. 1–7. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and " 'may not affirm simply by isolating a specific quantum of supporting evidence.' " *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, August 26, 2005. Tr. 19. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: an unspecified depressive disorder and social anxiety disorder. Tr. 19. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20-21. The ALJ assessed Plaintiff had a residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to understand, remember, and carry out simple tasks. The claimant is limited to occasional interaction with coworkers. The claimant is limited to no interaction with the public. The claimant is limited to occasional changes in a routine work setting.

Tr. 23.

At step four, the ALJ determined that Plaintiff had no past relevant work. Tr. 29. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as auto detailer, dishwasher, and laundry aide. Tr. 29-30. The ALJ therefore found Plaintiff not disabled. Tr. 30.

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to identify his arthralgias as a severe impairment at step two, (2) discrediting his subjective symptom statements without clear and

convincing reasons for doing so, and (3) rejecting lay witness testimony without a germane reason. Pl. Br., ECF 12.

## I. Step Two

At step two, the ALJ determines "whether the claimant had severe impairments during the period for which he seeks disability benefits." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). "This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment, and 2) if so, determining whether the impairment is severe." *Michael K. v. Bisignano*, No. 1:24-CV-3195-EFS, 2025 WL 1517234, at *4 (E.D. Wash. May 28, 2025) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). An impairment is severe "if it 'significantly limits' an individual's 'ability to do basic work activities.'" *Id.* (citing 20 C.F.R. § 404.1520(c)).

The step-two analysis is a "threshold showing" that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account[.]" *Bowen v. Yuckert*, 482 U.S. 137, 147, 153 (1987). The ALJ may find that an impairment is not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28, *available at* 1985 WL 56856 at *3; *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (noting that "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.' ") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)) (emphasis in original). "Medical evidence alone is evaluated in order to assess the

effects of the impairments on ability to do basic work activities." SSR 85-28, *available at* 1985 WL 56856 at *4.

      In evaluating whether the claimant's impairments are severe, "the ALJ must consider the combined effect of all of the claimant's impairments on [the claimant's] ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citations omitted). "If [a claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, [the Commissioner] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(ii); *see also* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); SSR 85-28, *available at* 1985 WL 56856 at *3 ("Although an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilit(ies) to do basic work activities, the possibility of several such impairments combining to produce a severe impairment must be considered.").

      Plaintiff argues the ALJ erred by not including "Arthralgias of Multiple Joints" as a severe impairment at step two. Pl. Br. 12-13. Plaintiff contends "the ALJ reasoned that the record . . . does not contain 'evidence of an acceptable medical source documenting objective clinical signs or test results showing ... arthritis," and "concluded that arthritis was not a medically determinable impairment." Pl. Br. 13 (citing Tr. 20). Plaintiff points to a medical appointment from December 4, 2014, where Dr. Cheryl Crowe diagnosed him with arthralgias and noted "slightly decreased ROM in all direction [*sic*] at extremes due to restriction/stiffness." *Id.* (citing Tr. 442-43). At that appointment, plaintiff complained of "worsening joint pains," daily right

5 – OPINION AND ORDER

shoulder pain, and "body aches in knees and in hips." Tr. 441. Plaintiff argues "the ALJ's description and reasoning that arthtritis/arthralgias were not properly diagnosed is not supported by the record," and faults the ALJ for failing to "include any physical limitations, such as the ones described by [plaintiff] such as joint pain and that his impairment affect[ed] his ability to see, use his hands, lift, climb, walk, bend, squat and kneel." Pl. Br. 13.

The ALJ cited to the portion of the record containing Dr. Crowe's report, but concluded that it did not constitute "evidence of an acceptable medical source documenting objective clinical signs or test results showing … arthritis." Tr. 20 (citing Tr. 442). Nevertheless, the ALJ went on to "assum[e] for the sake of argument" that the condition "constitute[d] [a] medically determinable impairment[]," and found the record showed it was "nonsevere as the evidence fails to establish that . . . arthritis resulted in an effect on the claimant's ability to work that persisted at a significant level for at least 12 continuous months during the period relevant to this decision." Tr. 20. The ALJ imposed no physical limitations in the RFC. Tr. 23. The ALJ found plaintiff had no functional limitations due to arthritis based on the opinion of Michael Henderson, M.D. Tr. 26. Dr. Henderson performed an examination of plaintiff in October 2020. Tr. 413. In his report, Dr. Henderson noted that plaintiff "complains of arthritis in the knees, hips, left middle finger," but found that "on exam there is no indication of arthritis in any of these joints." *Id.* Dr. Henderson further concluded that, as "far as arthritis goes if he has arthritis [it] is quite mild and should not cause any functional impairments," and "[t]he hands, hips and knees have full function based on the clinical observation and testing that was possible." Tr. 414.

It is the claimant's burden to provide evidence at step two showing the existence of a "severe" medically determinable impairment. *See Yuckert*, 482 U.S. at 146 n.5, 148; *Webb*, 433 F.3d at 686. "A diagnosis alone is not enough to establish a severe impairment, and neither can a

6 – OPINION AND ORDER

claimant's subjective complaints establish severity." *Gorder v. Colvin*, No. 3:13-CV-05450-KLS, 2014 WL 1466450, at *3 (W.D. Wash. Apr. 15, 2014) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *see also Delia P. v. Saul*, No. 5:19-00246 ADS, 2020 WL 5750426, at *5 n.8 (C.D. Cal. Sept. 25, 2020) ("The diagnosis of a condition alone, . . . does not establish disability.") (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)). Nothing in Dr. Crowe's chart note indicates that plaintiff's arthralgia caused any particular functional limitation or affected his ability to perform basic work activities. *See Gorder*, 2014 WL 1466450 at *3 (finding the doctor's "one-time reference to a bare arthritis diagnosis, without any indication that this condition was severe, is not significant, probative evidence that the ALJ needed to discuss at step two"). Because the ALJ supported the decision to find no severe impairment at step two with substantial evidence, the Court will not disturb that finding here.

## II. Symptom Testimony

Plaintiff also contends the ALJ erred by discrediting his testimony about the extent of his mental health limitations. Pl. Br. 8-12. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear

and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the initial hearing, Plaintiff testified that he had lived with his father since he was six years old.[2] Tr. 47. He has never lived on his own. Tr. 47. He has had a driver's license since 2016, and drives twice a month to the grocery store and back. Tr. 47. He gets really nervous and has to bring someone with him to take over should he need to stop driving. Tr. 48.

Plaintiff received disability benefits as a child. Tr. 49. He was on an individualized education plan (IEP) in school. Tr. 48. He needed special books for math and reading, and could not do any problem solving. Tr. 48. Records show that, even with an IEP, plaintiff received F's in almost all of his classes in his first semester of tenth grade, which was his final semester of high school. Tr. 241. His cumulative grade point average for high school was 1.477. *Id.* Plaintiff had difficulty being around people in school. He did not respond well to feedback and criticism, and would get mad and walk away. Tr. 51.

---

[2] Before that, plaintiff was removed from the custody of his mother, who had alcohol and drug abuse issues. Plaintiff's mother married five times by the time plaintiff was five years old. Tr. 447. Plaintiff was abused by his stepfathers as a toddler and given drugs and alcohol. *Id.*.

8 – OPINION AND ORDER

Plaintiff refuses to use public restrooms. Tr. 51. Plaintiff also testified that he gets paranoid. He will panic and have to leave, and will not want to return to where he was. Tr. 52. Plaintiff's father helps him buy clothes and pays the bills. Tr. 52. Plaintiff's father supervises him, telling him when to cook, when to make lunch, and where he should go if he needs to go anywhere. Tr. 53. Plaintiff cannot go anywhere without supervision. Tr. 53.

Plaintiff cannot control his anger. Tr. 53. He walks away from people who talk to him, and cannot work around other people. Tr. 54. He received counseling when he was sixteen for two years. Tr. 55. The medications he took made him sick and he still feels side effects from them. Tr. 55. In written testimony, Plaintiff shared that it is difficult to learn new things. He is uncomfortable around people. Tr. 250. He needs help shopping and he is scared of traffic. Tr. 253.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 24. In particular, the ALJ found that Plaintiff's "lack of mental treatment" is not "completely consistent with, nor does it fully support, [his] allegations regarding the intensity, frequency, or persistence of the limiting effects of his mental impairments." Tr. 25. "[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also* SSR 16-3p, 2017 WL 5180304 at *9-10.

The ALJ observed that plaintiff "report[ed] at the hearing that he does not want to take medication due to unwanted side effects with a medication that he was prescribed as a child." Tr.

9 – OPINION AND ORDER

24; *see* Tr. 55. Plaintiff testified that he took Geodon between the ages of 16 and 18 and that he stopped taking the medication because of the side effects. Tr. 55; *see also* Tr. 406 (indicating plaintiff took Geodon between the ages of 16 and 18). Records show that plaintiff was also prescribed Seroquel as a child. Tr. 446. A chart note from 2014 indicates that "[r]ecent interaction with doctors all wanted him to restart Geodon," but plaintiff described "severe side effects." Tr. 441. In fact, plaintiff has consistently stated that he does not resume Geodon because it causes seizures. *See* Tr. 406–07 (describing Geodon caused "twitches in the joints of my fingers" and joint pain); Tr. 447 (reporting seizures from Seroquel and Geodon in his mid-teens).

While the ALJ acknowledged that plaintiff refused to take his childhood medication due to "unwanted side effects," the ALJ did not discuss the seizures or explain how plaintiff's refusal to take antipsychotics under these circumstances somehow suggests that his complaints are not credible. Moreover, this aspect of the ALJ's decision appears inconsistent with the ALJ's conclusion that "neither the alleged schizophrenia or schizoaffective disorder constitute a medically determinable impairment" Tr. 20, and that plaintiff presented within normal limits at psychological consultative examinations. Tr. 24. Otherwise stated, the ALJ discounted plaintiff's testimony due to his refusal to take antipsychotic medications while, at the same time, discrediting his testimony by relying on portions of the medical record that suggest he did not need them. Additionally, the record shows that plaintiff was not averse to taking other prescribed medication; plaintiff took his blood pressure medication, which did not produce side effects, as well as over-the-counter allergy medication. Tr. 371 (tolerating blood pressure medication without difficulty); Tr. 382.

10 – OPINION AND ORDER

The ALJ also discounted plaintiff's testimony because he once mentioned that he was tired of counseling. Tr. 24 (citing Tr. 406). In 2021, plaintiff told consultative examiner Brent Shields, Ph.D., that he had not been involved in counseling since he was a child "because I got tired of it because it was always the same thing every time I had to go." Tr. 406. The ALJ's reasoning fails to account for critical aspects of plaintiff's symptom testimony. In his function report, plaintiff described difficulty concentrating and focusing.³ Tr. 242. He gets sidetracked, Tr. 244, and has memory lapses. Tr. 247. He also paces and talks to himself, and fantasizes about being someone else. Tr. 242. As the court has recognized, "[a] person suffering from mental health issues may not show the best judgment, and may fail to seek treatment." *Jake R. v. Comm'r*, 421 F. Supp. 3d 1006, 1015–16 (D. Or. 2019). "It is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.* (simplified) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Moreover, there is no indication that mental health counseling was prescribed or recommended for plaintiff as an adult. *See Lingenfelter*, 504 F.3d at 1040 (holding the ALJ may discount a claimant's testimony where "the claimant fails to follow, without adequate explanation, a prescribed course of treatment)"; *see also Molina*, 674 F.3d at 1113 (holding "the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment").

Additionally, as plaintiff argues, the ALJ failed to address an important aspect of plaintiff's symptom testimony—that he cannot use a public bathroom, even a single person bathroom—because of the lack of privacy, having to touch a toilet that someone else had used, and the possibility that someone will knock on the door. Tr. 51, 401. The vocational expert

---

³ Notably, plaintiff's father assisted plaintiff in completing the function report. Tr. 242.

11 – OPINION AND ORDER

testified that, if an employee needed to leave work and go home to use the bathroom more often than during a lunch break, it "would be a problem." Tr. 58.

Plaintiff also argues the ALJ erred by failing to address his ability to interact with supervisors. The RFC indicates that plaintiff is limited to occasional interaction with coworkers but contains no discussion about his ability to interact appropriately with supervisors. Interactions with supervisors are distinct from interactions with coworkers because of the "separate dynamic created by the supervisory relationship." *Kieara C. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-CV-01336-YY, 2025 WL 262368, at *4 (D. Or. Jan. 22, 2025) (quoting *Dennis v. Colvin*, No. 06:14-CV-00822-HZ, 2015 WL 3867506, at *8 (D. Or. June 20, 2015) (finding omission of a supervisory restriction was no "small error"). Therefore, on remand, the ALJ shall address this issue as well.

Plaintiff argues the ALJ erred by discounting his symptom testimony as inconsistent with reported daily activities. Pl. Br. 10. Plaintiff misreads the ALJ's decision. In fact, the ALJ acknowledged that Plaintiff's activities "as reported, are somewhat limited," and found that the "objective medical evidence does not support a medical necessity for even the extent of limitation described by the claimant." Tr. 25. That is, the ALJ suggested that Plaintiff's activities supported his complaints, but did not use this as a factor in discounting his opinion.

### III.   Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen*, 100 F.3d at 1467 (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to

articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine v. Commissioner,* 574 F.3d 685, 694 (9th Cir. 2009).[4] But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

In support of plaintiff's disability application, Plaintiff's father, aunt, sister, and family friend provided letters describing his limited ability to function. Tr. 346-350. The lay witness testimony tracked Plaintiff's own account of his mental health symptoms from 2005 to 2023. *See id.*

The ALJ found the lay witness statements irrelevant in part because they expressed views on Plaintiff's ability to work, which is an issue reserved to the Commissioner. Tr. 28. The ALJ also disregarded the lay witness testimony to the extent it purported to provide medical opinions from nonmedical sources. Tr. 28. The ALJ otherwise found the statements "persuasive to the

---

[4] This issue is currently under consideration in the Ninth Circuit. *See Hudnall v. Dudek*, 130 F.4th 668, 671 (9th Cir. March 7, 2025) (vacated and withdrawn, 2025 WL 1024393, at *1 (9th Cir. Apr. 7, 2025)). Unless and until the Ninth Circuit provides contrary, binding guidance on the interpretation of the 2017 regulations, the Court will continue to require ALJs to state a germane reason for disregarding lay witness testimony. *Valentine*, 574 F.3d at 694.

extent that [they] describe[] the nature of some of the symptoms of the claimant's impairments." Tr. 28. The lay witness testimony otherwise tracked Plaintiff's testimony, and as discussed above, the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony. Accordingly, on remand, the ALJ shall also reevaluate the lay witness testimony.

## CONCLUSION

For the reasons given above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED: July 11, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

14 – OPINION AND ORDER